UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

DEC 26 2023

BY
DEPUTY_____

| | |
|---|---|
| Dajore J. Marks,<br>    Plaintiff, | )<br>)<br>) Civil Action |
| v. | )<br>) CASE NO. 1:23-cv-00431-MJT-CLS |
| Javitch Block LLC,<br>    Defendant. | )<br>)<br>)<br>) |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Dajore J. Marks, hereby submits this memorandum in opposition to Defendant Javitch Block LLC's Motion to Dismiss, pursuant to the Fair Debt Collection Practices Act (FDCPA).

### I.   INTRODUCTION

**The Elements Of A FDCPA Claim**

Defendant, Javitch Block LLC, argues that Mr. Marks has failed to state a claim for relief under the FDCPA. A plaintiff alleges an FDCPA claim by alleging: (1) the plaintiff is a consumer; (2) the debt involved meets the definition of debt in the FDCPA; (3) the defendant is a debt collector; and (4) the defendant committed an act prohibited by the FDCPA. *Turner v. Cook*, 362 F.3d 1219, 1227–28 (9th Cir. 2004); *Heejon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 680 (D.Haw. 2017).

The first element of an FDCPA claim is that the plaintiff is a consumer. *Heejon Chung*, 250 F. Supp. 3d at 680. A consumer is a person obligated or allegedly obligated to pay a debt. 15 U.S.C. § 1692a(3). Here, Mr. Marks has alleged that he is a consumer because he was allegedly obligated to pay a debt from a past credit card account. Thus, Mr. Marks has alleged the first element of an FDCPA claim.

The second element of an FDCPA claim is that the debt involved meets the definition of debt in the FDCPA. *Heejon Chung*, 250 F. Supp. 3d at 680. A debt is an obligation or alleged obligation to pay money from a transaction that is primarily for personal, family, or household purposes. 15 U.S.C. § 1692a(5). Here, Mr. Marks alleged debt resulted from a personal credit card.

The third element of an FDCPA claim is that the defendant is a debt collector. *Heejon Chung*, 250 F. Supp. 3d at 680. A debt collector is a person who uses an instrumentality of interstate commerce to engage in a business in which the principal purpose is the collection of debts, or regularly attempts to collect debts owed or due to another. 15 U.S.C. § 1692a(6). Mr. Marks alleges in his complaint that Javitch Block LLC, regularly engages in the practice of debt collection. Therefore, Mr. Marks has alleged the third element of an FDCPA claim.

The fourth and final element of an FDCPA claim is that the defendant committed an act prohibited by the FDCPA. *Heejon Chung*, 250 F. Supp. 3d at 680. Among the many ways a debt

collector can violate the FDCPA, Javitch Block LLC did so by attempting to collect a debt at an inconvenient place, 15 U.S.C. § 1692c(a)(1).

The FDCPA does not define "place" but the ordinary meaning of "place" is clear. See "Place,"Merriam-WebsterDictionary,https://www.merriam-webster.com/dictionary/place?utm_campaign=sd&utm_medium=serp&um_source=jsonld (last visited December 17, 2023) defining "place" as "a building, part of a building, or area occupied as a home."

Defendant, Javitch Block LLC("JBL"), continued to communicate with Mr. Marks at a known inconvenient place, even though he mailed a letter to JBL which informed him that contacting him via email was the only convenient way to communicate JBL's communication and collection attempts constitute a violation of 15 U.S.C. § 1692c(a)(1) of the FDCPA. Furthermore, this communication and collection attempt was an invasion of Mr. Marks privacy, intruding upon his seclusion. This intrusion resulted in Mr. Marks experiencing frustration, anger, and anxiety. The unwanted communication directed at Mr. Marks exemplify the type of actions that Congress intended to prohibit when enacting the FDCPA.

The Fair Debt Collection Practices Act ("FDCPA") has been in existence since 1977 to prevent abusive practices in the collection of consumer debts. Regulation F was later introduced to further refine and enforce these practices.

While the FDCPA provides the foundation for consumer protections related to debt collection, it has some limitations. For instance, it doesn't include extensive provisions for new

modes of communication, like email or social media.

Regulation F was introduced by the Consumer Financial Protection Bureau ("CFPB") as an updated set of rules that supplement and detail requirements under the FDCPA. It aims to adapt to changes in the way debtors and collectors communicate brought by technological advances, and to provide clear rules that would prevent legal ambiguity.

The purpose of Regulation F is not to replace the FDCPA, but to fortify and modernize it. It provides consumers with more clarity and agency in their interaction with debt collectors, yet still allowing the collection industry to carry out their operations effectively.

**Regulation F § 1006.14 Harassing, Oppressive, or abusive conduct.**

> **(h) Prohibited communication media— (1) In general.** In connection with the collection of any debt, a debt collector must not communicate or attempt to communicate with a person through a medium of communication if the person has requested that the debt collector not use that medium to communicate with the person.

**1692c Communication in connection with debt collection**
> (a) Communication with the consumer generally
> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt— (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer.
>
> In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location.

## II.     ARGUMENTS

**A. Misapplication of the *TransUnion* and *Perez* Precedents**

The Defendant's reliance on *TransUnion LLC v. Ramirez* and its interpretation in *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, is a fundamental misapplication of legal principles when applied to the present case under 15 U.S.C. § 1692c(a)(1) of the FDCPA. This misapplication is not merely an academic error but a substantive one that misdirects the focus from the actual legal issue at hand — the protection of consumer privacy against intrusive debt collection practices.

    1. <u>Contextual Difference in Legal Issues:</u> *TransUnion LLC v. Ramirez* primarily dealt with the issue of credit reporting and its implications for privacy and economic interests. The Supreme Court's analysis in *TransUnion* was centered on the concrete injury requirement for Article III standing in the context of a statutory violation involving credit reporting. This context is markedly different from the issue at hand, which involves direct communication with consumers in debt collection under § 1692c(a)(1). The privacy concerns in § 1692c(a)(1) are not analogous to the credit reporting issues in TransUnion, making the Defendant's reliance on this case misplaced and inapplicable.

    2. <u>Nature of Injury in *TransUnion* vs. § 1692c(a)(1):</u> In *TransUnion*, the Court was concerned with whether the plaintiffs had suffered a concrete injury as a result of procedural violations in credit reporting. The nature of injury contemplated in *TransUnion* was tied to the accuracy of credit information and its potential impact on consumers' economic welfare. In contrast, § 1692c(a)(1) addresses the concrete injury of privacy intrusion, which is inherently different. This provision protects consumers from the invasion of their personal space and peace, a type of injury that is immediate and tangible, unlike the more abstract harm considered in *TransUnion*.

    3. <u>Misinterpretation in *Perez*:</u> In *Perez*, the Fifth Circuit applied the principles of

*TransUnion* to claims under the FDCPA, focusing on procedural violations. However, the Defendant's application of *Perez* to the present case overlooks the substantive nature of the violation under § 1692c(a)(1). The *Perez* decision does not negate the fact that a violation of § 1692c(a)(1) can constitute a concrete injury, as it directly impacts the consumer's privacy and tranquility.

   4. <u>Inapplicability of *TransUnion's* Concrete Injury Analysis:</u> The Defendant's argument erroneously applies *TransUnion's* concrete injury analysis to a situation where the injury is inherently concrete. The receipt of unwanted communications at inconvenient times or places, as prohibited by § 1692c(a)(1), is a direct intrusion into the consumer's personal life. This intrusion, unlike the procedural violations discussed in *TransUnion* does not require additional proof to establish its concrete nature.

**B. Misrepresentation of Applicable Statutory Provisions**

The Defendant's erroneous citation of 15 U.S.C. § 1692e in the context of the present case, which fundamentally concerns 15 U.S.C. § 1692c(a)(1), demonstrates a substantial deviation from the pertinent issues at hand and a misinterpretation of the applicable legal provisions.

   1. <u>Misalignment with Core Allegations:</u> The citation of 15 U.S.C. § 1692e, which pertains to "false, deceptive, or misleading representation or means in connection with the collection of any debt," starkly misaligns with the core allegations of this case. The Plaintiff's claims are rooted in the protections afforded by 15 U.S.C. § 1692c(a)(1), which specifically addresses the timing and nature of communications in debt collection and aims to safeguard consumers from intrusions into their personal and private lives.

   2. <u>Concrete Nature of Privacy Intrusions Under § 1692c(a)(1):</u> The nature of the

injury under § 1692c(a)(1) is inherently concrete and distinct from the more abstract or economic harms typically associated with § 1692e. The receipt of unwanted communications at inconvenient times or places constitutes a direct and tangible intrusion into the consumer's personal life and privacy. This type of injury is immediate and palpable, reflecting a clear invasion of the personal sanctity that § 1692c(a)(1) seeks to Protect.

3. <u>Inapplicability of TransUnion's Concrete Injury Analysis to § 1692c(a)(1):</u> The Defendant's attempt to apply *TransUnion's* concrete injury analysis to the concrete injuries associated with privacy intrusions under § 1692c(a)(1) is inapplicable and inappropriate. The direct and personal nature of these intrusions, as experienced by the Plaintiff, does not require the same type of abstract consideration of harm that was at issue in *TransUnion*. Instead, the injuries here are of a nature that has long been recognized as concrete and actionable within the realm of privacy and personal space protection.

### III. <u>Consumer Privacy Under Section 1692c</u>

Section 1692c specifically addresses communications in connection with the collection of a debt, prevents third party disclosures of debt collection information, and provides protections for consumers to stop unwanted communications from debt collectors. As such, section 1692c is squarely focused on consumer privacy. *West v. Costen*, 558 F. Supp. 564, 577 (W.D. Va. 1983) ("the primary purpose of section 1692c is to protect the consumer's privacy and employment"). Section 1692c(a) limits the kinds of contact debt collectors can have with consumers, thus preventing debt collectors from intruding upon a consumer's seclusion at inconvenient times or places, or at a consumer's place of employment, or with the consumer directly if the consumer

hired an attorney to deal with the debt collector. Section 1692c(b) prevents debt collectors from telling most third parties about the consumer's debt, thus preventing debt collectors from publicly disclosing private facts about the consumer (yet another subset of invasion of privacy type torts). And finally, 1692c(a)(1) specifically gives the consumer the right to inform a debt collector what "times" or "places" are inconvenient to the consumer.

### IV. When Addressing Article III Standing

The Tenth Cir has held "We address standing on a claim-by-claim basis." *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 813 (10th Cir. 2021).

### V. Standing

To have standing, a plaintiff must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted). Injury in fact, the first of the three elements, requires that a plaintiff has suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Courts have focused on analysis on the "concrete" requirement, which requires that an injury be "real" rather than "abstract." *Id.* (citation omitted). Simply put, "[n]o concrete harm, no standing." *TransUnion LLC*, 141 S. Ct. at 2200.

Plaintiff alleged that Defendant, Javitch Block LLC, violated § 1692c(a)(1) by contacting

him via mail when he specifically requested in writing to contact him by email only and left his email address for the debt collector to communicate. Relevant to standing, he alleged that Defendant Javitch Block LLC, contacted via mail which was unwanted and intruded on his privacy and caused him "to suffer intangible harms, which Congress has made legally cognizable in passing the FDCPA." Therefore, Plaintiff has sufficiently alleged concrete harm. As a general principle, "'[c]oncrete' is not . . . necessarily synonymous with 'tangible.'" *Spokeo, Inc.*, 136 S. Ct. at 1549. Though concreteness may be more easily satisfied for tangible injuries like physical or monetary harms, intangible injuries, like the ones Mr. Marks alleges, may nevertheless be concrete for standing purposes.

In determining whether an intangible harm is sufficiently concrete to constitute an injury in fact, we look to both history and to the judgment of Congress. The Court has explained: "history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider." *TransUnion LLC*, 141 S. Ct. at 2204 (citations omitted). And "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is . . . instructive and important." *Spokeo, Inc.*, 136 S. Ct. at 1549. Accordingly, we "afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation." *TransUnion LLC*, 141 S. Ct. at 2204 (citation omitted).

Looking at history, courts have considered "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc.*, 136 S. Ct. at 1549 (citation omitted). Stated another way, this inquiry "asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion LLC*, 141 S. Ct. at 2204. At common law, courts readily recognized a concrete injury arising from the tort of intrusion upon seclusion—a tort protecting against defendants who intrude into the private solitude of another. See Restatement (Second) of Torts § 652A(2)(a)(1977); see also id. § 652B. And the Supreme Court recently cited "intrusion upon seclusion" as a harm "traditionally recognized as providing a basis for [a] lawsuit in American courts." *TransUnion LLC*, 141 S. Ct. at 2204 (citing *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.), cert denied, No. 20-209, 2021 WL 1521010 (U.S. Apr. 19, 2021)).

This tort imposes liability for intrusions on a plaintiff's privacy, such as when the defendant demands payment of a debt by sending a letter after being told not to contact Plaintiff by mail, only via email, "with such persistence and frequency as to amount to a course of hounding the plaintiff." Restatement, *supra*, § 652B cmt. d. Mr. Marks suffered a similar harm when Defendant, Javitch Block LLC, made an unwanted contact in an attempt to collect a debt after being told not to contact him by mail and to contact him via email only about a debt, despite him having sent written notice on the preferred communication Defendant Javitch Block LLC, disregarded the request. Thus, Mr. Marks suffered an injury bearing a "close relationship" to the

10

tort of intrusion upon seclusion. See *Gadelhak*, 950 F.3d at 462–63 (determining that a consumer's receipt of a few unwanted text messages under the Telephone Consumer Protection Act is "a modern relative" of the tort of intrusion upon seclusion—a tort with "long common law roots"); see also *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 279–80 (3d Cir. 2019) (determining that a debtor had standing after a debt collector disclosed her account number in violation of the FDCPA because it "implicate[d] core privacy concerns," which were "closely related to harm that has traditionally been regarded as providing a basis for a lawsuit" (citation omitted)). Despite Defendant Javitch Block LLC's contentions that a single letter causes no actual damages, we find *Gadelhak* instructive. That court rejected the argument that because a few text messages failed to rise to the level of an actionable intrusion-upon-seclusion tort, the resulting harm amounted to an abstract injury only:

> [W]hen *Spokeo* instructs us to analogize to harms recognized by the common law, we are meant to look for a "close relationship" in kind, not degree. In other words, while the common law offers guidance, it does not stake out the limits of Congress's power to identify harms deserving a remedy. Congress's power is greater than that: it may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law. A few unwanted automated text messages may be too minor an annoyance to be actionable at common law. But such texts nevertheless pose the same kind of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable.

*Id.* at 462–63 (brackets, internal quotation marks, citations, and footnote omitted). So too here. Though a single letter may not intrude to the degree required at common law, that phone call and text poses the same kind of harm recognized at common law—an unwanted intrusion into a plaintiff's life upsetting him to file this action. See *TransUnion LLC*, 141 S. Ct. at 2204 ("*Spokeo* does not require an exact duplicate in American history and tradition."). Unlike here, the Court in *TransUnion* held that certain plaintiffs failed to allege a concrete harm. 141 S. Ct. at 2209–10. But that case differs markedly from ours. In considering the Fair Credit Reporting Act, the *TransUnion* Court noted that a company's maintaining incorrect information in its database, absent dissemination to a third party, failed to create a harm bearing a close relationship to the common-law tort of defamation. *See id.* Without the "necessary" defamation component that the tortious words were published, this harm differed in kind. See id. at 2209 (citation omitted). That analysis doesn't control our case because, as just explained, *Lupia v Medicredit* 8 F.4th 1184(10th Cir. 2021) has alleged the necessary components for a common-law intrusion-upon-seclusion tort.

Next, Courts have considered the "judgment of Congress." *Spokeo, Inc.*, 136 S. Ct. at 1549. In enacting the FDCPA, Congress recognized that abusive debt-collection practices may intrude on another's privacy interests. See 15 U.S.C. § 1692(a) ("Abusive debt collection practices contribute to . . . invasions of individual privacy."); see also *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 81 (2d Cir. 2018) ("Congress enacted the FDCPA to protect against

12

the abusive debt collection practices likely to disrupt a debtor's life." (internal quotation marks and citation omitted)). Mr. Marks complains that his receipt of an unwanted letter did just that.

That isn't to say that Congress may "simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *TransUnion LLC*, 141 S. Ct. at 2205 (citations omitted); see also *Spokeo, Inc.*, 136 S. Ct. at 1550 ("[Plaintiff] cannot satisfy the demands of Article III by alleging a bare procedural violation."). We cannot

"treat an injury as 'concrete' for Article III purposes based only on Congress's say-so." *TransUnion LLC*, 141 S. Ct. at 2205 (citations omitted). But we needn't rely on Congress's "say-so" alone. As noted, Mr. Marks claims have roots in long-standing common-law tradition. Therefore, Mr. Marks has sufficiently alleged that he suffered a concrete injury. In the recent Tenth Circuit case *Lupia v Medicredit*, 8 F.4th 1184 (10th Cir. 2021) Medicredit plead that "Plaintiff Lupia failed to plead that Ms. Lupia failed to allege a sufficient injury in her Complaint." See Appellant's Supp. Br .at 4 ("[Ms. Lupia's] Complaint does not allege that the phone call injured her or invaded her privacy."). The Court noted, Ms. Lupia alleged in her Complaint that Medicredit caused her to suffer "intangible harms" that Congress "made legally cognizable in passing the FDCPA." Appellant's App. vol. 1 at 7 (citations omitted); see also *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152–53 (10th Cir. 2013) ("[W]e examine the . . . complaint in assessing a plaintiff's claims, including the allegations in support of standing." (internal quotation marks and citation omitted)). Coupled with Mr. Marks factual allegations

13

about the receipt of an unwanted letter allegations suffice. Indeed, Mr. Marks asserted the same privacy interests.

Finally, Defendant Javitch Block LLC argues that the Seventh Circuit's recent standing cases apply (citing *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041 (7th Cir. 2021). That case predates the Supreme Court's decision in *TransUnion* in which the Court clarified the *Spokeo* standing requirements, including that the tort of intrusion upon seclusion is recognized as an intangible harm providing a basis for a lawsuit in American courts. See *TransUnion LLC*, 141 S. Ct. at 2204–14. *Pennell* analyzes 15 U.S.C. § 1692c(c), it dealt with a plaintiff's complaints of "stress and confusion"—not an invasion of privacy. 990 F.3d at 1045. Likewise, in *Lupia v Medicredit*, 8 F.4th 1184 (10th Cir. 2021) determine that Ms. Lupia has satisfied the injury-in-fact requirement.

## VI. Known or Which Should Be Known Standard

Section 1692c(a)(1) of the FDCPA provides that a collector cannot contact the consumer at a time or place that is "known or should be known" as inconvenient. This clearly means that once a debt collector receives a request to cease communication at specified inconvenient times or places, whether the request is made orally or in writing, the debt collector then knows the time or place is inconvenient and must honor that request. "Section 1692c(a) does not impose any writing requirement on the consumer. . . ." Thus, Plaintiff specifically told Defendant Javitch Block LLC in writing not to contact him in the mail and only by email; therefore, Defendant Javitch Block LLC., knew other methods were inconvenient.

## VII. "Verification of Debt" 1692g(b) Argument

In this case, Plaintiff does not assert any claim under 15 U.S.C. § 1692g(b). Plaintiff's cause of action herein is solely under 15 U.S.C. § 1692c(a)(1). The alleged debt in question has been past due and reporting since 2022 and any of the 15 U.S.C. § 1692g(b) rights have passed. Just to be clear Plaintiff has not alleged Defendant failed to cease within the first 30 days of receiving Defendant dunning letter nor that "validation or verification" was inadequate pursuant to 15 U.S.C. § 1692g(b).

## VIII. Conclusion

In summary, the Defendant's reliance on 15 U.S.C. § 1692e and the misapplication of the *TransUnion* and *Perez* precedents represent a fundamental misunderstanding or misrepresentation of the legal issues central to this case. The Plaintiff's claims are squarely grounded in the protections against privacy intrusions as articulated in 15 U.S.C. § 1692c(a)(1), and the nature of the injuries alleged are inherently concrete and distinct from the concerns addressed by § 1692e. As such, the Defendant's Motion to Dismiss, predicated on these misrepresentations, fails to grasp the substantive legal and factual underpinnings of the Plaintiff's claims and should be denied. The court must recognize the specificity of the Plaintiff's claims under § 1692c(a)(1) and the concrete nature of the injuries suffered, which are directly addressed by the statutory provision and supported by the legislative intent behind the FDCPA.

The allegations of unwanted intrusion, leading to frustration, anxiety, and privacy

invasion, are grounded in both historical recognition and Congressional judgment through the FDCPA. These are not abstract grievances but concrete harms as envisaged by legal doctrine and supported by seminal case law. Therefore, he has Article III standing to pursue his claims.

WHEREFORE, Plaintiff requests the Court denies Defendant's Motion to Dismiss.

Respectfully submitted:

Dated: 12-22-23

Dajore J Marks
3760 Broadmoor Drive
Beaumont, TX 77707
Dmarks2011grad@gmail.com

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was served via USPS mail to:

Michael D. Slodov, OH SCR #0051678
JAVITCH BLOCK LLC
1100 Superior Ave., 19th Floor
Cleveland, OH 44114
(866) 881-2400 ext. 2781
Direct (440) 318-1073
(fax) (216) 685-3039
mslodov@jbllc.com
Attorneys for Defendant
Javitch Block LLC

Dated: 12-22-23

Dajore J Marks