UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| Dajore J. Marks, | ) | CASE NO. 1:23-cv-00431-MJT-CLS |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE: Michael J. Truncale |
| v. | ) | |
| | ) | MAGISTRATE JUDGE: Christine L. Stetson |
| Javitch Block LLC, | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT JAVITCH BLOCK LLC'S
REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF DAJORE J. MARKS' COMPLAINT**

Now comes Defendant Javitch Block LLC ("Javitch"), by and through the undersigned counsel, and for its reply to Plaintiff Dajore Marks' ("Marks") Response (ECF No. 6) to Javitch's motion to dismiss (ECF No. 5), states as follows.

**I.      INTRODUCTION**

Javitch's motion attached three letters referred to in the complaint, all of which were central to Marks' claims, the same are undisputed and may be considered when ruling on Javitch's motion. ECF Nos. 5-1 (9/29/23 Javitch letter to Marks), 5-2 (10/17/23 Marks letter to Javitch), 5-3 (10/30/23 Javitch letter to Marks). *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

Javitch's motion asserted that Marks lacked Article III standing because Marks failed to show a causal connection between the claimed injury and the conduct complained of, and the only alleged injury Marks claims to have suffered as a result of Javitch mailing its October 30 verification response (as opposed to emailing it) appeared as a conclusory assertion in paragraph

15, that Javitch "caused injury in fact, by causing among other things, mental and emotional distress… [and] invasion of personal privacy…." ECF No. 5, PageID#21-23; ECF No. 1 ¶ 15.

Javitch further argued that Marks' claim under 15 U.S.C. § 1692c(a)(1) failed as a matter of law because:

> (a) Marks' October 17 letter disputing the debt, requesting verification and stating that the "only convient [sic] way to contact me is via email," did not identify a time or place or time or place known to be inconvenient to the consumer, and instead concerned a preferred medium of communication (which falls under 15 U.SC. § 1692d and 12 C.F.R. § 1006.14(h)), but even if it was an expression of a time or place, the October 30 letter was allowed to be mailed in response to a consumer-initiated mailing, pursuant to the CFPB official interpretation of 12 C.F.R. § 1006.6(b)(1); ECF No. 5, PageID# 23-24;
>
> (b) Marks' October 17 letter disputed the debt and requested verification, and 15 U.S.C. §1692g(b) statutorily required Javitch to mail the verification response; ECF No. 5, PageID# 24-25;
>
> (c) The October 30 letter Javitch sent to Marks was not a collection attempt, but provided requested verification without containing any demand for payment; ECF No. 5, PageID# 25-26; and
>
> (d) 12 C.F.R. § 1006.14(h), which governs consumer-driven restrictions on the medium of communication, contains two exceptions under 12 CFR § 1006.14(h)(2)((ii) and (iii), both of which apply here. The first, authorizing one response using the same medium as the sender used to convey the restriction, and second, when the medium used is required by law. ECF No. 5, PageID# 26-27.

Marks spends nearly all of his response in opposition arguing that Javitch's position on standing, present a "fundamental misapplication of legal principles when applied to the present case under 15 U.S.C. § 1692c(a)(1) of the FDCPA" ECF No. 6, PageID# 52. He asserts *Perez* and *TransUnion* do not apply here because his claim under § 1692c(a)(1) concerns an invasion of privacy, "intruding upon his seclusion. This intrusion resulted in Mr. Marks experiencing

frustration, anger, and anxiety. The unwanted communication directed at Mr. Marks exemplify the type of actions that Congress intended to prohibit when enacting the FDCPA." ECF No. 6, PageID# 56, 62. Marks argues that the intangible harm he seeks to remedy for the October 30 letter concern an "unwanted contact" and is similar to the privacy tort of intrusion upon seclusion as outlined in Restatement (Second) of Torts § 652A(2)(a) and § 652B(1977). ECF No. 6, PageID# 57. Marks concludes by arguing "unwanted" calls and texts are sufficient to confer standing under the FDCPA, relying on *Gadelhak v. AT&T Servs., Inc*., 950 F.3d 458 (7th Cir. 2020), *DiNaples v. MRS BPO, LLC*, 934 F.3d 275 (3d Cir. 2019), and *Lupia v Medicredit,* 8 F.4th 1184(10th Cir. 2021). ECF No. 6, PageID 57-61.

Marks does not directly respond to Javitch's arguments above as to the merits; he presents a dictionary definition of the word "place" as used in 1692c(a)(1), but doesn't explain how mailing a letter rather than emailing it falls within his definition; ECF No. 6, PageID# 50; he concedes he has made no claim under 15 U.S.C. § 1692g(b), but does not address the cases cited explaining the relationship between § 1692c(a)(1) § 1692g(b); ECF No. 6, PageID# 62 (ECF No. 5, pageID # 25)(citing *Marino*, *Clark*, and *Schultz*); he acknowledges 12 C.F.R. § 1006.14(h), the regulation governing the medium of communications exists, but does not explain why he believes the exceptions to that restriction are inapplicable here, ECF No. 6, PageID# 51; and he maintains the October 30 letter was a collection attempt, but he does not point to anything in the October 30 verification response qualifying as a demand for payment. ECF No. 6, PageID# 57.

II.     **ARGUMENT**

    A.     *Marks lacks Article III standing to maintain this action*

The primary fallacy in Marks' arguments on standing emanates from his selective reading of only the third sentence in his October 17 letter, as if it were the only sentence.  See ECF No. 5-

2, PageID #34. Beyond repeating what the complaint alleged, Marks opposition does not acknowledge that his October 17 letter to Javitch actually contained language in the first two sentences disputing the debt and requesting verification: "I am disputing the alleged debt" and "I need validation of the debt." ECF No. 5-2, PageID #34. Because his letter is referred to in the complaint, ECF No. 1 ¶ 9, it is central to his claim, and Marks did not make any objection to the submission of the letters, nor submit any other materials, the court may consider the letters undisputed in resolving Javitch's motion. *Morris v. United States*, No. 1:22-CV-227, 2023 WL 8699378, at *3 (E.D. Tex. Dec. 14, 2023); *Copeland v. U.S. Bank Nat'l Ass'n*, No. 3:19-CV-02110-L-BT, 2020 WL 4007129, at *2 (N.D. Tex. Apr. 6, 2020), R &R adopted, 2020 WL 1969313 (N.D. Tex. Apr. 24, 2020).

Marks' generalized assertion of injury in the complaint are overcome here by the factual showing made by the documents attached to Javitch's motion, showing that the injury complained of was invited by Marks' dispute and request for verification of the debt under 15 U..S.C. § 1692g(b), and therefore any injury he suffered was self-inflicted. *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 418 (2013); *Zimmerman v City of Austin*, 881 F3d 378, 389 (5th Cir 2018)("standing cannot be conferred by a self-inflicted injury."). A self-inflicted injury is not fairly traceable to the conduct of the defendant. *Kinetica Partners, LLC v. U.S. Dep't of the Interior*, 505 F. Supp. 3d 653, 668 (S.D. Tex. 2020) (collecting cases).

Marks' October 17 letter announcing that he disputed the debt and 'I need validation of the debt," invited Javitch to send him verification pursuant to 15 U.S.C. § 1692g(b). Marks' common law analog to intrusion upon seclusion under Restatement (Second) of Torts § 652B, falls flat here because the common law only afforded a remedy for intrusion upon seclusion when "One … intentionally *intrudes*…" and the word "intrude" means "to thrust oneself in *without invitation*,

4

permission, or welcome."[1] Restatement (Second) of Torts § 652B; *Amin v. United Parcel Serv., Inc.*, 66 F.4th 568, 577 (5th Cir. 2023)("§ 652B makes 'the intrusion itself' the basis for liability…."). An invitation negates the very concept of an intrusion under § 652B. See *Lingar v. Live-In Companions, Inc.*, 300 N.J. Super. 22, 35, 692 A.2d 61, 67 (App. Div. 1997)("Here, plaintiffs invited Mack into their home. No evidence was presented supporting the claim of an unlawful intrusion"); *Acacia on the Green Condo. Assoc., Inc. v. Gottlieb*, 2009 WL 2964373, 2009-Ohio-4878, ¶ 61, 63 ("The contractor then invited Jevnikar inside the unit. … Jevnikar did not enter without the consent of the occupant….Finding that Gottlieb could not provide sufficient evidence to establish there was an unauthorized entrance, we conclude summary judgment was properly granted.").

The cases relied on by Marks are no help either. *Gadelhak*, which found standing for "unwanted text messages" under the TCPA, is distinguishable because Javitch's October 30 response was not "unwanted;" instead, it was specifically requested by Marks. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020). *DiNaples*, which concerned protected information made accessible to the public, is also inapt because here, there was no information made accessible to the public. *DiNaples v. MRS BPO, LLC,* 934 F.3d 275, 280 (3d Cir. 2019). *Lupia* is likewise inapplicable because it concerned "continuing to call her after …[the defendant] received her cease-and-desist letter" and there was no directive to cease communications in this case. *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1191 (10th Cir. 2021).

As argued in Javitch's motion, here, Marks requested verification, and his request distinguishes this case from those involving a cease communication directive under 15 U.S.C. § 1692c(c). Indeed, Courts have found a request for verification gives rise to a waiver of the cease

---

[1] https://www.merriam-webster.com/dictionary/intrude

communication directive.  *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1172 (9th Cir. 2006); see also *Mammen v. Bronson & Migliaccio, LLP*, 715 F. Supp. 2d 1210, 1217 (M.D. Fla. 2009).  The request for verification likewise makes this case distinguishable from those cases finding an analog between common law privacy/intrusion upon seclusion claims and cease communication directives under 15 U.S.C. § 1692c(c). ECF No. 5, at n. 1, PageID #22.

      B.     *Marks has no support for the proposition that his October 17 letter is governed by 15 U.S.C. § 1692c(a)(1).*

Marks' October 17 letter does not include any reference to an inconvenient time or place, nor any instruction to cease communicating with him, and he offers no support for his novel theory that § 1692c(a)(1) includes a consumer's preference for emails. To the extent Marks argues the definition of "place" in the statute refers to "a building, part of a building, or area occupied as a home," Opposition, p. 3, his October 17 letter does not identify any building, or area occupied of a building or home that would be inconvenient to receive communications. Instead, in light of the plain meaning of "email," as "a means or system for transmitting messages electronically (as between computers on a network),"[2]  one would generally understand that an email sent to Marks at his designated email address would likely be received by him on a computer kept at his home or on his phone, which goes with him from place to place, undermining the notion that a preference for emails is tantamount to a convenient "place."

A more natural reading of Marks' October 17 letter is that it contains a preferred *medium* of communication, which is *not* governed by 15 U.S.C. § 1692c(a)(1) at all. See 12 C.F.R. § 1006.2(d), Official Interpretation of 2(d)(1).[3] A "medium" is, plainly defined, as a "a means of

---

[2] https://www.merriam-webster.com/dictionary/email.
[3] "1. Any medium. Section 1006.2(d) provides, in relevant part, that a communication can occur through any medium. 'Any medium' includes any oral, written, electronic, or other medium. For example, a communication may occur in person or by telephone, audio recording, paper document, mail, email, text message, social media, or other electronic media."

effecting or conveying something" or a "channel or system of communication."[4] Failing to notify Javitch of any time or place that was inconvenient is fatal to his claim. *Lindley v. TRS Recovery Assocs., Inc.,* No. 2:12-CV-109, 2012 WL 6201175, at *4 (S.D. Tex. Dec. 12, 2012)("Regular United States Mail to a last known residential address is not on its face "unusual" or "inconvenient.").

      C.    *Marks abandoned his claim by failing to address Javitch's motion to dismiss for failure to state a claim*

A plaintiff's failure to address arguments in a dispositive motion to dismiss constitutes abandonment of that claim. *See, e.g., Black v. N. Panola Sch. Dist.,* 461 F.3d 584, 588 n.1 (5th Cir. 2006) (claim abandoned by plaintiff when she failed to defend it in response to motion to dismiss); *Terry Black's Barbeque, LLC v. Sate Auto. Mut. Ins. Co.,* 22 F.4th 450, 459 (5th Cir. 2022) ("A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims.").

Marks does not address Javitch's argument that it was entitled to mail the verification response pursuant to 15 U.S.C. § 1692g(b) and the Official Interpretation of 12 C.F.R. § 1006.6(b)(1) ¶ 2,[5] 12 C.F.R. § 1006.14(h)(2)((ii) and (iii).[6]

---

[4] https://www.merriam-webster.com/dictionary/medium
[5] "2. Consumer-initiated communication. If a consumer initiates a communication with a debt collector at a time or from a place that the consumer previously designated as inconvenient, the debt collector may respond once at that time or place through the same medium of communication used by the consumer."
[6] "(2) Exceptions. Notwithstanding the prohibition in paragraph (h)(1) of this section:…(ii) If a person initiates contact with a debt collector using a medium of communication that the person previously requested the debt collector not use, the debt collector may respond once through the same medium of communication used by the person; or (iii) If otherwise required by applicable law, a debt collector may communicate or attempt to communicate with a person in connection with the collection of any debt through a medium of communication that the person has requested the debt collector not use to communicate with the person."

For the reasons previously set forth by Javitch and not opposed by Marks, grounds exist to dismiss for failure to state a claim. See *supra*, ¶ I (a)-(d).

### III.   CONCLUSION

For all the foregoing reasons, Defendant Javitch Block LLC respectfully prays that the Court grant its motion to dismiss, find Marks lacks Article III standing to maintain this action, or alternatively dismiss this action for failure to state a claim, and for such other and further relief that the Court deems just and proper under the circumstances.

Dated:  December 28, 2023                                  Respectfully Submitted

/s/ Michael D. Slodov
Michael D. Slodov, OH SCR #0051678
JAVITCH BLOCK LLC
1100 Superior Ave., 19th Floor
Cleveland, OH 44114
(866) 881-2400 ext. 2781
Direct (440) 318-1073
(fax) (216) 685-3039
mslodov@jbllc.com

Attorneys for Defendant
Javitch Block LLC

## **CERTIFICATE OF SERVICE**

      I certify that on December 28, 2023, a copy of the foregoing was filed electronically in the ECF system.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including plaintiff's counsel as described below.  Parties may access this filing through the Court's system. A true copy was also sent on December 28, 2023 by email to:

Dajore J Marks
3760 Broadmoor Drive
Beaumont, TX 77707
Dmarks2011grad@gmail.com

                                                                        s/ Michael D. Slodov
                                                                       Michael D. Slodov